UNITED STATES of America, Plaintiff–Appellee,

v.

Eustaquio C. DEASES, Defendant–Appellant.

No. 90–3010.

United States Court of Appeals, Tenth Circuit.

Nov. 1, 1990.

Lee Thompson, U.S. Atty., and Richard L. Hathaway, Asst. U.S. Atty., Topeka, Kan., for plaintiff-appellee.

Alfredo Parrish of Parrish, Kruidenier & Exline, Des Moines, Iowa, for defendant-appellant.

Before LOGAN, ANDERSON, and McWILLIAMS, Circuit Judges.

McWILLIAMS, Senior Circuit Judge.

Deases was charged in the first count of a two-count indictment with the unlawful possession with intent to distribute 500 grams, or more, of cocaine, in violation of 21 U.S.C. § 841(a)(1). In the second count he was charged with using or carrying a firearm during and in relationship to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1).

Prior to trial Deases filed a motion to suppress the use at trial of items taken in a search of his automobile. After hearing, that motion was denied. The defendant later pleaded guilty to both counts in the indictment, reserving his right to appeal the district court's denial of his motion to suppress. He was then sentenced to 60 months imprisonment on each count, the two sentences to be served consecutively.

On appeal Deases asserts that the district court erred in three particulars: (1) The motion to suppress should have been granted because the search of his automobile was unlawful; (2) at the hearing on the motion to suppress, the district court, over objection, allowed inadmissible and prejudicial testimony to be introduced into evidence; and (3) in imposing sentence the district court erred when it refused to make a downward departure based on the "substantial assistance" which Deases claimed he had given the government. We shall consider these matters in reverse order.

18 U.S.C. § 3553(e) provides that on motion of the government, if a defendant has given "substantial assistance" to the government in the investigation or prosecution of another person who has committed an offense, a district court shall have the authority to impose a sentence below the level established by statute as the minimum sentence. Section 5K1.1 of the federal sentencing guidelines implements 18 U.S.C. § 3553(e) and reads as follows:

> Upon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines.

In this case, the government did not file a 5K1.1 motion. However, at his sentencing Deases nonetheless asked for a downward departure on the ground that he had, in fact, given "substantial assistance" to the government and was therefore entitled to a downward reduction, even though the government had not filed the 5K1.1 motion. In this regard the United States Attorney advised the court that Deases had not cooperated nor had he given the government "substantial assistance," and that any information which he had provided could not be substantiated. In any event, the district court refused Deases' request for the downward departure and Deases claims that such denial constitutes error. His argument is that 18 U.S.C. § 3553(e) and Guideline § 5K1.1 are unconstitutional and violate his Fifth Amendment Due Process rights.

Deases' argument in this regard has been considered, and rejected, by this Court in two recent cases. In *United States v. Kuntz,* 908 F.2d 655 (10th Cir.1990) we upheld § 5K1.1 which was challenged on about the same grounds as are urged in the instant case. In *United States v. Sorensen,* 915 F.2d 599 (10th Cir.1990) we upheld 18 U.S.C. § 3553(e) which also had been challenged on the same constitutional grounds urged here. Barring the "egregious" case referred to in *Kuntz,* which this case is not, a district court may not depart downward on the basis that a defendant has given the government "substantial assistance" unless the government has first filed a motion under § 5K1.1. In *Sorensen* and *Kuntz* we held that the requirement that the government must file a motion before a district court has the authority to make a downward departure on the ground of substantial assistance to the government is not subject to constitutional challenge.

At the hearing on the motion to suppress, the government called Kirk Simone, a trooper with the Kansas Highway Patrol, who testified concerning his stop of a vehicle driven by Deases on Interstate 35 and the ensuing search of the vehicle. Deases also testified and gave his version of events. On cross-examination, the United States Attorney, over objection, was allowed to ask Deases whether he was a cocaine user and whether he had previously been arrested for cocaine possession. Deases' answer was that he had used cocaine before and that he had "turned himself in" on a cocaine possession charge in Ames, Iowa. The district court allowed this limited inquiry on the grounds that, depending on Deases' response, it conceivably had some bearing on Deases' credibility. We agree. Indeed, it is difficult to imagine a situation where, in a hearing on a motion to suppress, the admission of inadmissible evidence would justify a reversal on appeal. This was not a jury trial but only an evidentiary hearing in connection with a pending motion. This situation, i.e., inadmissible testimony in an evidentiary hearing on a pretrial motion, is akin to the introduction of inadmissible evidence in a bench trial. In this latter connection, the general rule is that the introduction of inadmissible evidence in a bench trial is not grounds for reversal on appeal. *See United States v. Foley,* 871 F.2d 235, 239–40 (1st Cir.1989), *citing Sinclair v. United States,* 279 U.S. 749, 767, 49 S.Ct. 471, 477, 73 L.Ed. 938 (1929).

The main matter urged on appeal is that the search of Deases' vehicle and the seizure of a quantity of cocaine and a loaded shotgun from that vehicle was unlawful. At the hearing on Deases' motion to suppress, the government called one witness, State Trooper Kirk Simone. Officer Simone testified that he stopped the driver of a motor vehicle which was going 70 to 71 miles per hour in a 65 miles per hour speed zone, and that the only reason he stopped the vehicle was because the vehicle was violating the speed limit. He stated that at the time of the stop he had no suspicion that there was contraband in the vehicle, not even a hunch. Simone stated that he routinely stopped vehicles traveling five to six miles over the speed limit for the purpose of giving the driver a warning ticket and that the "policy" of the Kansas Highway Patrol was to stop all vehicles being driven five to six miles over the speed limit and issue the driver a warning ticket.

After stopping the other vehicle, Trooper Simone testified that he approached the stopped vehicle from the driver's side and that Deases was the driver. He advised Deases that he had been stopped because he was driving 70 to 71 miles per hour in a 65 miles per hour speed zone. At that point Deases produced his driver's license. Deases was then asked by Simone to exit his vehicle and take the right front seat of his marked patrol car. While in the patrol car, Simone stated that he issued Deases a warning ticket and returned Deases' drivers license. At this point Simone testified that Deases was becoming noticeably more nervous, even though he had been advised that he was only being given a warning ticket. Simone testified that in response to inquiry, Deases stated that he was en route from Texas to Ames, Iowa where he was a college student. As this nervousness in-

creased, Simone asked Deases if he had any drugs or other contraband in his automobile, and Deases responded that he did not. Thereafter, according to Simone, he asked Deases if he would consent to a search of his car, and that Deases' response was, "OK." Upon saying "OK," and before Simone could ask Deases to sign a written consent, Deases exited the patrol car. Trooper Simone then asked Deases to retrieve the keys from the ignition of his own car and unlock the trunk. Deases complied without comment or hesitation. Simone testified that he and Deases had been in the patrol car for about two or three minutes.

When the trunk was opened, Simone saw a shotgun and some suitcases. Simone opened a black travel bag in the trunk and espied plastic bags containing what appeared to be cocaine. At this point, Deases tried unsuccessfully to grab the bag away from Simone. Deases was then placed under arrest. Approximately one kilogram of cocaine was recovered from the trunk of Deases' vehicle.

Deases' testimony differed from Simone's. He testified that Simone said that he would not be free to leave until he opened the trunk, that he was not issued a warning ticket until after he was arrested and placed in jail, and that before he opened the trunk Simone "stood by" with "his hand on his gun."

In his written order denying Deases' motion to suppress, the district judge summarized the testimony of Simone and Deases, and then found that Deases' testimony was "not credible" and that Simone's was credible. The district court also found that the stopping of Deases' automobile under the described circumstances was reasonable and non-pretextual in its nature. The district court further found that when Simone requested permission to search his vehicle, Deases granted permission "without any apparent hesitation." It was on this general basis that the district court denied Deases' motion to suppress.

■ Deases' first argues that Simone's stop of Deases' vehicle was pretextual in nature. The district court found that the

stop of the Deases' vehicle was non-pretextual, and on appeal that finding cannot be disturbed unless we conclude it is "clearly erroneous." *United States v. Rivera,* 867 F.2d 1261, 1262–63 (10th Cir.1989).

In *United States v. Guzman,* 864 F.2d 1512 (10th Cir.1988), this court held that in determining whether a stop is pretextual or non-pretextual an objective test should be used, not a subjective test. In other words, "reasonable practice" and not "subjective purpose" governs. Although the district judge in his order denying Deases' motion for summary judgment did not explicitly recognize the rule of *Guzman,* we conclude that he nonetheless did not violate the rule. The fact that he chose to accept the trooper's version of events over Deases' does not violate *Guzman.* Further, as mentioned above, the district court did make specific mention that under all the circumstances Simone had acted "reasonably." In this connection, we note that Simone testified that it was the "policy" of the Kansas Highway Patrol to stop all vehicles driving five to six miles over the speed limit and issue warning tickets. In this same connection, the district court in its order quoted the following language from *United States v. Erwin,* 875 F.2d 268, 272 (10th Cir.1989).

In our view [the Tenth Circuit's view], under the circumstances presented here, a reasonable New Mexico patrol officer routinely would have stopped a vehicle traveling twelve miles over the speed limit even in the absence of illicit motive, and nothing in the record is to the contrary.

In *United States v. Erwin, supra,* we were unable to tell whether the district court used the "objective reasonableness standard" of *Guzman* or a "subjective standard" based on the officer's testimony. In such circumstance, we stated that regardless of the standard, " 'overwhelming objective evidence' exists in this case to conclude that the stop was reasonable," *Erwin,* 875 F.2d at 272, *citing United States v. Smith,* 799 F.2d 704, 710 (11th Cir.1986). Such observation applies to the instant case, and we will not disturb the

district court's holding that Simone's stopping of Deases' vehicle was non-pretextual.

■ Deases next contends that the duration of the stop was excessive. We do not agree. Deases and Simone agree that the two of them were in the patrol car for about two to three minutes. What happened thereafter is in dispute, but the district court chose to believe Simone's testimony that before asking Deases any questions about whether he possessed drugs, weapons or contraband, Deases had his warning ticket, drivers license and "all of his articles back in his hand." The district court also found credible Simone's testimony that he then Simone asked, and received permission, to search the vehicle and that Deases himself voluntarily opened the trunk for the officer.[1] The scope of the search did not exceed the scope of Deases' consent, which was to "search the car." Consent to search a car means to search the entire car and whatever is in it, unless such consent is otherwise restricted. *United States v. Espinosa*, 782 F.2d 888, 892 (10th Cir.1986). All things considered, the stop of the vehicle, the ensuing search of the trunk and the seizure of the contraband therein was lawful.

The instant case bears considerable resemblance to *United States v. Werking*, 915 F.2d 1404 (10th Cir.1990). In *Werking*, an automobile bearing California license plates was stopped by a state highway patrol officer on Interstate 80 in Wyoming. The officer stopped the vehicle because he suspected that the California car was being driven in violation of Wyoming's "one trip" permit law. That law requires all vehicles brought into Wyoming for sale to register at a port of entry and affix a permit to the vehicle's front windshield. The driver stated that he was driving the vehicle to Ohio to accommodate a friend. The driver also, on request, produced registration papers, a valid driver's license, and a letter from the owner authorizing him to drive the vehicle. Finding no problems with the papers pro-

duced by the driver, the officer filled out a "contact sheet" stating the reason for the detention and indicating that no violation had been found. The officer returned the papers to the driver and gave him a copy of the contact sheet. The officer then asked the driver if he had any contraband in the car, and the driver said he did not. The officer next asked whether the driver would mind if he took a look in the trunk. The driver said "no," he would not mind, and opened the trunk. The ensuing search of the trunk disclosed seventy-five pounds of marijuana.

The driver, Thomas Werking, was charged with the unlawful possession of marijuana. 21 U.S.C. § 841(a)(1). Werking filed a motion to suppress the use at trial of the marijuana taken from the trunk of his automobile. After hearing, the district court denied the motion to suppress, whereupon Werking pleaded guilty, reserving his right to appeal the district court's order denying his motion to suppress.

On appeal, we affirmed. In so doing, we rejected Werking's contention that the initial stop was pretextual. We also rejected the further contention that the officer's continued questioning of the driver after the driver's license and other papers had been returned violated Werking's Fourth Amendment rights. In connection therewith, we stated that "[a]t this point, the encounter between Werking [the driver] and Dyer [the officer] became an ordinary consensual encounter between a private citizen and a law enforcement official." Finally, we rejected Werking's contention that he did not voluntarily consent to the officer's search of the trunk of his car. In so doing, we noted that, according to the officer, Werking stated he had no objection to a search of his vehicle and opened the trunk himself and then made no objection to the search as it proceeded.

In the instant case, according to Trooper Simone, Deases made no objection to the search as it proceeded until he tried to snatch the black bag containing the cocaine

---

1. Having concluded that the initial stop of Deases' car was lawful, the government does not have the "heavier burden" in connection with

the consent issue which it would have if the initial stop was unlawful. *See United States v. Recalde*, 761 F.2d 1448, 1457 (10th Cir.1985).

out of the officer's hands. At that point only, his prior consent ended, however, the cocaine had already been found.

Judgment affirmed.